JONES v. EPSTEIN.

Opinion delivered June 10, 1918.

1. CONTRACTS—CONSTRUCTION—EXPLANATORY TESTIMONY.—Explanatory evidence is incompetent in the construction of a contract which is unambiguous.

2. LEASE—AGREEMENT FOR EXTENSION—FORFEITURE OF RIGHT.—A lease of land covered a period of five years with a provision for a three-year extension at the option of the lessee. The lessee broke some of the terms of the lease during the five-year period, and the lessor accepted the rent. *Held,* the lessee not having complied with the terms of the lease, the lessor had the right to refuse an extension.

Appeal from Chicot Chancery Court; *Z. T. Wood,* Chancellor; affirmed.

*J. C. Gillison,* for appellants.

1. The erection and operation of a mill was not a part of the consideration for the lease; the only consideration was the payment of the $100 rental. Appellants offered to pay the rental and there was no forfeiture. The intention of the parties when ascertained must govern as to whether a covenant or condition was intended by the words used and if a condition whether precedent or subsequent. Leases are construed most strongly against the lessor, and in favor of the lessee. 24 Cyc. 920, 991, 996.

2. But if appellee is correct in his contention as to the consideration of the lease, he waived the requirements by accepting annual rental for the land for two years after the mill was moved, and by acquiescing in the conversation and arrangements in his presence. The burden was on appellee and he has failed. The decree is against the law and the evidence.

*Jas. R. Yerger,* for appellee.

1. The erection and operation of a mill was an important part of the consideration. That was the primary purpose of the lease and the real consideration. Appellants had no right to renew. The lease reads "in consideration of the covenants and agreements hereinafter mentioned," etc. The very first covenant was that appellants "are going to erect a mill," etc. That and the rental make one consideration for the lease and it is inseparable. The testimony shows this and verbal testimony was competent to show what the real consideration was. 86 Ark. 309; 90 *Id.* 426; 99 *Id.* 218; 105 *Id.* 281; 101 *Id.* 603.

2. Appellants were duly notified that appellee would cancel the lease. The five year lease expired August 12, 1917.

3. The findings of the chancellor are not against the clear preponderance of the testimony. 71 Ark. 605; 68 *Id.* 314; 72 *Id.* 67.

HUMPHREYS, J. Appellee filed suit on August 14, 1917, against appellants in the Chicot Chancery Court

to cancel a lease on 20 acres, entered into on August 12, 1912, between Sam Epstein and Ruth Epstein, his wife, on the one part, and the Arkansas Cooperage Company on the other part, for the alleged reason that appellants had forfeited all right to an extension under the option clause of the contract by reason of a failure of consideration.

Appellants denied that there had been any forfeiture on account of failure of consideration and asserted their right as assignees of the lease to insist upon a three year extension of the lease under the option clause thereof.

The cause was submitted to the court upon the pleadings, exhibits and depositions, from which the chancellor found that the lessees had forfeited their right to an extension under the option clause in the contract by tearing down and removing the hoop mill from the premises, and decreed a cancellation of the lease. From this finding and decree, an appeal has been prosecuted to this court.

The lease involved in this case is as follows:

"This indenture made this 12th day of August, 1912, by and between Sam Epstein and Ruth Epstein, his wife, parties of the first part, and the Arkansas Cooperage Company, a corporation duly incorporated under the laws of the State of Arkansas, with domicile at Jennie in said county and State, party of the second part, Witnesseth,

"That the said party of the first part for and in consideration of the covenants and agreements hereinafter mentioned to be kept and performed by the said party of the second part has granted, demised and leased to the said party of the second part their successors and assigns the following described tract of land situated in Chicot County, Arkansas, and in the eastern diagonal half of the northwest quarter of the northwest quarter of section two, township 17, range 2 west, being particularly described as, beginning at the northwest corner of section two, thence east along the township line ten chains to the right-of-way of the American Forrest Company railroad, thence east along the said railroad right-of-way to a

slough 16-18 chains from point of beginning, thence south along said slough or woods to the southwest corner of said northwest corner of northwest quarter of said section two, containing 20 acres more or less. To have and to hold the said above described premises unto the said party of the second part, their successors and assigns, for the full period of five years from the date of this lease. And we, the said parties of the first part, hereby covenant to and with the said party of the second part that we will forever warrant and defend the title to the above described land against all claims whatever and it is distinctly agreed and understood between the parties hereto that at the expiration of five years the said parties of the second part shall have the right and option to keep and to hold the premises hereinbefore described for and during the full period of three years longer if they so desire upon the same conditions and terms of those expressed in this lease.

"It is further agreed and understood between the parties hereto that the said parties of the second part are going to erect on said premises certain buildings which will include a complete milling outfit for the manufacture of certain timber and that at the expiration of this lease that the said parties of the second part shall have the right to remove from said lease premises their milling plant with all of its outfit including the buildings in which it is contained, but they shall not have the right to remove any other buildings, and it is further understood and agreed that this same clause and right shall apply to the additional three years in the event said option of three years longer is exercised by said parties· of the second part.

"And the said party of the second part in consideration of the leasing of the premises as aforesaid by the parties of the first part does hereby bind themselves and agree to pay to the said parties of the first part as rent for said premises the sum of one hundred dollars ($100) in cash, the receipt of which is hereby acknowledged and

the sum of $100 on the 12th day of August of each year hereafter during the term of this lease.

"In witness of which said parties of the first part hereunto set their hands this day and year first above mentioned."

Immediately after the execution of the lease, the Arkansas Cooperage Company built a hoop mill and quite a number of small residences upon the property. This company operated the mill for about two years, at which time it transferred the lease to the Columbia Cooperage Company which operated the mill for about six months, and then removed it from the premises, but continued to use the small residences for rental purposes. It then assigned the lease for $250 to appellants. The annual rentals were paid during this time by the lessees. A few days before the expiration of the five year term, appellants tendered appellee $100 in an attempt to exercise their right to hold the property under the three year option clause in the lease. Appellee refused to accept the money, asserting that the option clause in the contract was rendered ineffectual by the removal of the mill from the premises.

Appellee's evidence tended to show that he was induced to make the lease through the representation that the mill and plant would improve the property so that he might be able to sell it in town lots, and that unless the Arkansas Cooperage Company had agreed to establish such a plant upon a portion of the property he would not have entered into the contract.

Appellant's testimony tended to show that the Cooperage Company wohld not have entered into the contract had it been required, as a part of the consideration, to erect and maintain a hoop plant or mill upon the premises.

Appellant contends that the construction and maintenance of the hoop plant was not a part of the consideration for the contract; that the only consideration moving from the lessees to the lessor was the payment of $100 per annum for a term of five years, with the privilege to

extend the lease 'for an additional term of three years upon the continued payment of $100 per annum. In other words, appellant contends that the only covenant or agreement imposed upon the lessees in order to hold the premises for an additional term of three years was the payment of $100 per annum. We think this contention is in conflict with the plain language of the contract. The contract provides:

"That the said parties of the first part for and in consideration of the covenants and agreements hereinafter mentioned to be kept and performed by the said party of the second part, has granted," etc. This language imports that something more than the mere payment of $100 was intended.

(1)   The option clause in the contract provides that it may be exercised "upon the same conditions and terms of those expressed in this lease." This indicates that there are conditions as well as terms expressed in the contract. One of the conditions, very clearly expressed, immediately following the option clause, is to the effect that the parties of the second part are going to erect on said premises a complete milling outfit for the purpose of manufacturing certain timber, with a reservation that the lessees shall have the right to remove the milling plant from the premises at the expiration of the five year term, or, in the event they exercised the option to remain for three years, to remove the milling plant at the expiration of that time. This language clearly indicates that the lessees not only agreed to construct but to maintain a milling plant on said premises until the expiration of the five year term of the contract, or, in the event of the exercise of the three years' extension, to maintain the milling plant until the expiration of that time. We do not think there is any ambiguity in the written lease and, under that view, it is unnecessary to discuss the other evidence in the case. Unless there were ambiguity in the contract, the evidence explanatory thereof was incompetent. *W. T. Rawleigh Medical Co.*

v. *Holcomb,* 126 Ark. 597; *W. T. Rawleigh Medical Co.* v. *J. H. Rose,* 133 Ark. 505.

(2)  It is insisted, however, by appellants, that appellee waived his right to deny an extension of the three year term under the option clause in the contract by accepting the annual rental during the five year term after the hoop milling plant had been removed from the premises.  We do not think so.  The only effect was to waive his right to bring suit during the balance of the five year term for damages on account of a breach of the contract.  It is specifically provided in the lease that the lessees may exercise an option of three years' extension on the conditions and terms provided in the lease.  One of the conditions was that the lessees should erect and maintain a milling plant as a part of the consideration for the contract.  The lessees could only insist upon the option clause by a performance of all the conditions in the lease.  They sought to exercise the option by the payment of $100 only.  This was not sufficient.  They should have offered to erect and maintain the hoop milling plant during the three years, in addition to tendering the sum of $100.

No error appearing in the record, the decree is affirmed.