[No. 16415.   Department One.   July 7, 1921.]

LOUISE SPOTTS *and* LOIS SPOTTS *by her Guardian,*
LOUISE SPOTTS, *Appellants,* v. WESTLAKE
GARAGE COMPANY, *Respondent.*[1]

WITNESSES (35)—COMPETENCY—TRANSACTIONS WITH PERSONS SINCE DECEASED—INTEREST IN EVENT. Rem. Code, § 1211, disqualifying a person from testifying as to transactions with a decedent respecting the renewal of a lease, is inapplicable in the case of a lessee who had parted with all interest under the lease, and was not a party to the record.

CONTRACTS (66)—LANDLORD AND TENANT (15)—LEASE—CONSTRUING INSTRUMENTS TOGETHER. An agreement for renewal of a lease, bearing same date as the lease and making reference to that instrument, must be considered as a part of the leasing agreement and supported by the same consideration; the fact that the renewal agreement was not acknowledged until five days after the date of the lease being immaterial.

LANDLORD AND TENANT (30)—EXTENSIONS AND RENEWALS—COVENANT FOR RENEWAL. Under a lease providing for renewal at the expiration of the term at the same rentals paid during the last year of the term, the lessee is entitled to a renewal at the reduced rental paid during the last year of his tenancy, under a modification of the rental terms of the original lease.

[1]Reported in 199 Pac. 294.

LANDLORD AND TENANT (15)—LEASE—CONSTRUCTION AND OPERA-
TION—CONDITIONS. A condition in a lease requiring the lessees to
deliver a bond in the sum of $5,000 as security for the performance
of its terms was waived by the acceptance of $1,000 in lieu thereof,
which sum was to be returned on the substitution of $2,400 in stock
of the corporation to be formed by the lessees, and on tender of the
stock the lessor said he did not care for it, that he had used the
$1,000, and asked that the sum be applied on the rent, and at no
time thereafter during the term of the lease ever demanded the de-
livery of the $5,000 bond.

SAME (15). The failure of a lessee to pay the rent due for cer-
tain months under a lease must be deemed waived by a subsequent
agreement modifying rentals for the future, which made no refer-
ence to the prior delinquent rent, and hence such failure would not
defeat the lessee's right to renewal of the lease under the agreement
between the parties.

SAME (15). Slight damages resulting from alterations or failure
to repair would not defeat the right of a lessee to a renewal of his
lease under an agreement providing therefor at the expiration of
the original term.

Appeal from a judgment of the superior court for
King county, Jurey, J., entered January 6, 1921, upon
findings in favor of the defendants, in an action for
unlawful detainer, tried to the court. Modified.

*G. Ward Kemp,* for appellants.

*McClure & McClure,* for respondent.

HOLCOMB, J.—In this action for unlawful detainer,
appellants set up a lease made and entered into be-
tween appellants Louise Spotts and her now deceased
husband, A. L. Spotts, on April 26, 1915, for a term of
five years from the first day of July, 1915, to L. G.
Horr and August R. Klaiber, as lessees. The premises
demised were described as lots 9 and 10, in block 14,
of an addition to the city of Seattle as laid off by the
heirs of Sarah A. Bell, in King county. It was alleged
that the term of the lease had terminated, and that
respondent was holding over without right.

The rental stipulated in the lease was $24,500 for

the term of five years, payable in monthly installments of $408, on the first day of each and every month during the term, save that the last installment specified was $428. By agreement between the parties to the lease, the lessees assigned the leasehold to a corporation agreed to be organized and which was organized, called the Westlake Garage Company, this respondent.

Respondent for answer admitted the execution of the lease, and pleaded a renewal agreement made between the parties as of the same date as the date of the lease, April 26, 1915, and which respondent alleged was intended to be, and was, a part of the same contract of lease; and also alleged that under the terms of the renewal agreement respondent had, on May 11, 1920, or before the expiration of the original lease term, notified appellants that it elected to renew the lease of the premises for an additional year, *at the rate paid during the previous year,* under and by virtue of certain written instruments recited in the notice, as follows:

"Lease executed and acknowledged April 26, 1915, between A. L. Spotts and Louise Spotts, his wife, as lessors, and August Klaiber and L. G. Horr, as lessees.

"Written consent by A. L. Spotts and Louise Spotts, his wife, to the assignment by August L. Klaiber and L. G. Horr of said lease to a corporation, said consent having been executed April 26, 1915.

"Receipt for $1000 executed April 26, 1915, by A. L. Spotts and Louise Spotts, his wife, to L. G. Horr.

"Agreement for modification of time of payment of rent executed March 16, 1917, by A. L. Spotts and Louise Spotts, his wife, and Westlake Garage Co., a corporation.

"Agreement executed and acknowledged April 26, 1915, by A. L. Spotts and Louise Spotts."

Appellants replied to the affirmative answer setting up affirmatively that the agreement (for renewal) was

9—116 WASH.

void for uncertainty, lack of equity and of consideration; that, if valid, the rights had been waived by the defendants failing to pay rents, make repairs and keep up securities, and failure to give proper notice of intent to hold over.

The questions presented by appellants upon this appeal are: (1) Whether there ever was any valid agreement for renewal; (2) if there was any agreement, whether it was waived by failure of the tenant to perform its obligations under the lease, and (3) if the tenant is entitled to a renewal, then on what terms and for what period.

Appellants first contend that the court erred in receiving testimony from Horr, one of the original lessees, to the effect that the agreement for renewal was made as a part of the agreement of lease, and that the lease would not have been accepted by the lessees without an agreement for renewal on the terms provided therein. Appellants argue that Horr, having been a party to the original lease, covenanting to pay for the entire period the sum of $24,500, is an interested party, notwithstanding the fact that Horr sold his stock in the respondent corporation organized to take over the lease, two and one-half years before the trial, and had no connection whatever with the respondent company. The objection was made that since Spotts was dead, and this action prosecuted by Mrs. Spotts individually and as guardian of the infant daughter of herself and deceased husband, the statute, Pierce's 1919 Code, § 7722 (Rem. 1915 Code, § 1211), precludes Horr from testifying because of his supposed interest. The contention is untenable. Horr was neither a party to the record, nor a party in interest. He was merely a witness in the case. He could not cross-examine witnesses, nor introduce any evidence

in his own behalf.  He was not bound by the admissions or acts of any party or attorney on either side of the case.  He was therefore a competent witness. *Sackman v. Thomas,* 24 Wash. 660, 64 Pac. 819; *Denny v. Schwabacher,* 54 Wash. 689, 104 Pac. 137, 132 Am. St. 1140; *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042.

Regardless of the competency of Horr as a witness, in regard to the above transaction (the renewal agreement), it was executed by Mr. and Mrs. Spotts; recites that they were lessors, and Klaiber and Horr were lessees "in that certain indenture of lease bearing even date herewith," and the instrument recites the date of April 26, 1915.  It is evident, therefore, that it was intended by the parties to the renewal agreement that it should be considered as a part of the agreement of lease and the terms of the instrument itself, and had the same consideration.  Nor does the fact that the renewal agreement was not acknowledged by the lessors until May 1, 1915, militate against that conclusion.

The renewal agreement provided among other things as follows:

"II.  It is distinctly understood and agreed between the parties hereto, that the lessees in said lease, their successors or assigns, shall be entitled, subject to all the conditions hereinbefore stated, to a renewal of said lease annually after the present term thereof expires until the tenth year from the date hereof, at any rate offered by any third person to the lessors herein, their heirs or assigns, but in the event the lessors, their heirs or assigns, are unable to obtain a better offer for the leasing of the said premises than the lessees are paying at such time, then, and in that event, the lessees herein, their successors or assigns, shall be entitled, at their option, to such renewal for the ensuing year at the rate paid during the previous year."

A preceding provision of the renewal agreement stipulated that the lessees should pay as rental during the renewal period a rent equal to any *bona fide* offer by any third person to the lessors which they should be able to obtain.

On March 27, 1920, appellants served notice upon respondent that they had a *bona fide* offer for the rental of the demised property for a period of three years, beginning July 1, 1920, and ending July 30, 1923, for a total rental of $27,000, payable at $750 each month in advance, the first $750 for July, 1920, to be deposited by April 3, 1920, and a cash deposit of an additional sum of $3,000 to be delivered to lessors on or before July 1, 1920, to insure the performance of the lease by the lessees, and so much thereof as may not be used for damages to apply on the rental for the last four months of the three-year term; the lessees further agreeing to keep up all repairs to the building and garage, except ordinary repairs to the roof and walls of the building; the lessees to have six per cent per annum interest on the $3,000; all further terms of the lease to be the same as the terms of certain paragraphs of the lease of respondent.

The trial judge found, upon ample proofs, notwithstanding the evidence was somewhat conflicting, that appellants did not have a *bona fide* offer as stated in the above notice; that the proposed lessee above referred to was one Wagner; that Wagner did not have $3,000; that his father-in-law, who was interested in the matter with him, refused to take the lease of the property at a rental of $750 per month, and refused to finance Wagner in taking the lease upon the property, and that the notice above mentioned was not given nor served upon respondent by appellants in good faith;

and that respondent was not required either to accept or reject the same.

During the term of the lease respondent had become delinquent in the payment of the rent in the aggregate amount of $972 for nine months prior to February, 1916, and appellants then served notice on respondent to pay the delinquent rent or vacate the premises. In March, 1917, a modification agreement was sought and obtained by respondent, in the form of a written memorandum, whereby the rents for the remainder of the term of the lease were materially changed both as to time and amounts of monthly installments. Nothing was said in this agreement about the payment of the aforesaid delinquent rents. By this modification agreement, the rents for the remainder of the term from the first day of March, 1917, to and ending on the 30th day of June, 1920, were fixed as follows: On the 12th day of April, May, June, July and August, 1917, $350 for each month; on the 12th day of each succeeding month for six months, $354.05; for the next ensuing twelve months, beginning with March, 1918, on the 12th day of each month, the sum of $404.35; for the next ensuing twelve months, beginning March, 1919, on the 12th day of each month, the sum of $476.15; and for the four months commencing March, 1920, the sum of $408 on the first day of each month, except the last month, for which the rent was fixed at $428. The evidence uncontrovertibly showed and the trial court found that the rents as above fixed were promptly paid and that respondent had not violated any of the terms relating thereto in any substantial particular.

The modification as to rentals must be considered in no other way than a change of the amounts of rental to be paid from and after the time fixed by the agree-

ment, March 1, 1917, to July 1, 1920, and the rents, therefore, for the last year, were fixed as follows:

For the last month $428; for the three preceding months, $408; for the eight preceding months, $476.15, and those were the rentals respondent notified appellants it desired for the renewal term. Notwithstanding this finding, the court concluded that the respondent was entitled to a renewal for the ensuing year, after the termination of the original lease on July 1, 1920, at the rents fixed in the original lease. With this conclusion we cannot agree. As said above, the rentals were undoubtedly modified by that agreement so that the rentals for the last year were changed, doubtless in consideration of the fact that nine months' rent prior to March 1, 1917, had been delinquent. We are also of the opinion that the nine months' delinquent rent was waived by appellants when the modification agreement was made, and that the nonpayment thereof does not in any way interfere with the renewal of the lease. We conclude, however, that the rentals to be paid after the renewal of the lease, in the absence of a *bona fide* offer for an increased rental, must be fixed at $476.15 for the first eight months; $408 for the next three months, and $428 for the last month each year of the renewal term.

Appellants vehemently argued, however, that the lessee is not entitled to a renewal on any terms, because of several reasons. Passing the first contention that the renewal agreement was void and without consideration, and the second, that the nonpayment of rent during the original term precluded a renewal of the lease for the additional time, both of which contentions we have heretofore discussed, it is next contended that the original lease provided that the respondents should

give security for the performance of the terms of the lease, which was violated. The original lease provided as follows:

"Lessees agree that they will execute and deliver to lessors, a bond with good and sufficient sureties, to be acceptable to lessors in the full penal sum of $5,000, or other satisfactory security, conditioned that lessees will, in all respects, carry out the terms and conditions of this lease, and pay the rental for said premises for said term according to the terms and conditions thereof."

At the time the lease was executed, Mr. and Mrs. Spotts executed an agreement by which they acknowledged receipt from Horr of the sum of $1,000 to be held as collateral security for the faithful performance of the terms and conditions of the lease, with a proviso that Horr could, at any time during the term of the lease, substitute for the $1,000 in cash, stock of the value of $2,400 in the corporation to be organized. This agreement further provided that Horr was to receive six per cent interest on the $1,000 from the date of the agreement, April 26, 1915, to a date thirty days prior to the substitution of the stock for the $1,000. This $1,000 in cash was accepted by the lessors as satisfactory security at the time of the execution and delivery of the lease, instead of a bond for $5,000. After the organization of the respondent corporation, as agreed, and the delivery of the assignment to it, Horr went to Mr. Spotts and told him that the lessee was ready to put up the $2,400 in stock, and draw down the $1,000. Spotts told Horr that he had used the $1,000 and asked if he could take it out on the rent. Thereupon the $1,000 was applied upon the rent due, and when Horr wanted to put up the stock of the corporation as security, Spotts told Horr that he did not care anything

about the stock. At no time thereafter during the term of the original lease was the $5,000 bond demanded of respondent.

We are of the opinion that when the $1,000 was reduced to payment of rent, and the $2,400 in corporate stock was declined (and that during the early period of the lease), and no $5,000 bond thereafter required, the matter of security to be furnished by the lessee must be deemed to have been waived. Any any rate, appellants should have demanded the security under the terms of the original lease after respondent notified appellants of its intention to exercise its option for renewal, instead of which, on June 1, 1920, appellants served notice upon respondent to vacate the premises.

It is also contended that respondent is not entitled to a renewal of the lease for the reason that it has violated the provision of the lease providing for repairs by the lessees.

The lease provides, in § 6, that the lessee shall not have the right to make any additions or alterations in the building without the written consent of the lessors, and that at the expiration of the term, or other termination of this lease they will quit and surrender the premises, leaving the same in as good condition as they were in when lessees took possession thereof, damage by fire and the elements excepted.

The evidence shows that some damages have been caused to the garage building by the use thereof by lessees, as a garage, and that the same could be repaired at an expense of not to exceed $90 to $100. The trial court, however, believed that even some of these items were structural in their nature, rather than repairs, and that the remainder were insignificant. Under the terms of the lease above stated, there would be no breach of the covenant to repair until the end of

the term. 24 Cyc. 1112; Tiffany, Landlord and Tenant, p. 781.

On the whole, upon the essential questions in this controversy, the findings of the trial court are amply supported by competent evidence. We cannot, however, agree with the conclusion of the trial court as to the agreed rental that was to be paid for the last year of the original lease, and which should be paid for the renewal term.

In accordance with our own conclusion upon that phase of the matter, the judgment of the trial court is modified so that the respondent may renew the lease for the ensuing twelve months upon the payment each year of $476.15 for the first eight months thereof; $408 for the next three months thereof, and $428 for the last month thereof. Annually until the expiration of ten years from June 26, 1915, unless evicted for cause, respondent will be entitled to renewal upon the same terms, unless a *bona fide* offer to appellants from any third person of better rent shall have been obtained by appellants, at the rate paid during the previous year, in conformity with paragraph 2 of the renewal agreement. In all other respects the judgment is affirmed.

Appellants having recovered substantial benefits in this appeal, will recover costs of appeal.

PARKER, C. J., MACKINTOSH, BRIDGES, and FULLERTON, JJ., concur.