31 So.2d 648

**GADSDEN BOWLING CENTER, Inc., v. FRANK et al.**

7 Div. 905.

Supreme Court of Alabama.

July 31, 1947.

Harvey Deramus, of Birmingham, and Julius Swann, of Gadsden, for appellant.

Hood, Inzer, Martin & Suttle, of Gadsden, for appellees.

STAKELY, Justice. .

This is an appeal from a decree of the equity court overruling the demurrer to

a cross-bill. The question in the case is whether the tenant under a written lease is entitled to an extension of the lease under its terms and conditions.

H. W. Frank (appellee) owned certain premises in the City of Gadsden, Alabama. On March 11, 1941, he, as lessor, and Gadsden Bowling Center, a partnership composed of Clyde O. Weller and Kathleen Weller, as lessees, entered into a written lease of the premises for a term of five years from July 15, 1941 to July 15, 1946. Thereafter the Wellers transferred and assigned the lease to Gadsden Bowling Center, Inc., a corporation (appellant) with the consent of H. W. Frank. Subsequently H. W. Frank sold and conveyed the premises to Estel P. Frank, his wife (appellee).

The original bill was filed by Gadsden Bowling Center, Inc., against Estel P. Frank and H. W. Frank to compel specific performance of a provision of the lease under which complainant claims the right to an extension of the lease for an additional period of two years, with certain increase in the amount of rent. The written lease is attached to the bill as Exhibit A and is made a part thereof. It is alleged that appellees have made demand upon appellant for possession of the premises. It is prayed that the lease be extended for an additional term and that appellees be enjoined from disturbing appellant's peaceful possession.

Appellees filed an answer and cross-bill alleging various breaches in the provisions of the lease, claiming that by reason thereof Estel P. Frank is entitled to possession of the premises for which a decree is asked, together with judgment for rent, damages, attorney's fees and general relief.

Paragraph Fourth of the lease is as follows: "Fourth: That if the Tenant shall have faithfully and properly kept and performed all the agreements, terms and conditions of this lease through its entire term, the Tenant shall have the right to extend the term of this lease for an additional period of two years, under the same terms and conditions, except that the monthly rent payable for such additional two year period will be $225.00, rather than the $200.00 per month provided for below, for the first five year term. * * *"

In the lease the lessee covenanted with the lessor as follows:

"a. That the rent will be paid in advance at the Landlord's place of business on the first day of each rental month.

"b. That the Tenant will faithfully and properly perform and keep all the agreements, terms and conditions set out in the lease and upon Tenant's failure to pay in full any monthly installment of rent when due, or to faithfully and properly perform or keep any agreement, term or condition set out in said lease, the Landlord shall have the option of terminating said lease, without the necessity of the Landlord giving the Tenant any kind of notice or making any kind of demand on Tenant.

"c. That upon the termination of the lease by expiration of the term thereof, or by breach of any agreement, term or condition by the Tenant, the Tenant will surrender peaceable possession of the premises.

"d. That upon taking possession of the premises, the Tenant will install therein new equipment for operating a Bowling Center, the same being of modern design and furnished to the trade by Brunswick-Balke-Collender Co., and that all furnishings and equipment placed in the premises by the Tenant during the term of the lease will be owned by the Tenant and will be kept free from any encumbrance thereon, except subject to a chattel mortgage lien, or other lien, to secure purchase money, in favor of Brunswick-Balke-Collender Co.

"e. That neither the failure of the Landlord to promptly exercise his option to terminate this lease for some default of the tenant, nor his failure to promptly exercise any other option, nor his acceptance of the payment of rent installments after they are past due, shall be considered as a waiver of the Landlord's right to thereafter insist upon a termination of the lease for such cause, or for some cause subsequently arising.

"f. It is further mutually agreed in said lease between the Landlord and Tenant that time is of the essence of all agreements set out therein."

It is charged in the cross-bill that appellant violated and breached the lease in the following respects:

"1. Appellant had defaulted in the payment of the rent owing for the period from July 1, 1946 to July 15, 1946.

"2. The appellant had breached the term of the lease requiring payment of the rental in advance, on the first day of each month, and had allowed said rental to be in arrears for as long as two and three months at a time, and with such frequency as to indicate a general course of conduct, and on numerous occasions had given to Appellees worthless checks in payment of rent which were dishonored on account of insufficient funds.

"3. That appellant had breached the provisions of said lease against encumbering the furnishings and equipment placed in the leased premises, except for a purchase money mortgage in favor of Brunswick-Balke-Collender Company, by the execution of a mortgage on the furnishings and equipment to the Wellers in the amount of $14,000.00, dated December 28, 1942, and recorded in Mortgage Record 280 at Page 238 in the Probate Office of Etowah County, Alabama.

"4. That Appellant had also breached the provisions of said lease against encumbering the furnishings and equipment placed in the leased premises by the execution of a mortgage on said furnishings and equipment to the First National Bank in Gadsden, securing an indebtedness of $8000.00, and which mortgage is dated October 1, 1945, and recorded in Mortgage Record 297, at Page 359 in the Probate Office of Etowah County, Alabama."

We need not stop to consider whether the cross-bill contains equity since inadequacy of legal remedies is not an essential element of a cross-bill. It is sufficient if the subject matter of the cross-bill relates to the subject matter of the original bill and it does in this case. Ashe-Carson Co. v. Bonifay et al., 147 Ala. 376, 41 So. 816; Smith v. Maya Corp., 227 Ala. 6, 148 So. 621.

The original term of the lease terminated July 15, 1946. One mortgage on the property of the lessor on the leased properties was dated December 28, 1942 and the other mortgage embracing like property was dated October 1, 1945. There was de-fault in payment of rent for the period from July 1, 1946 to July 15, 1946. There were other frequent defaults in the payment of rent and on numerous occasions worthless checks were given by the tenant in payment of rent. However, there was no unpaid rent when appellant filed its original bill. Appellant gave written notice of its intention to extend the lease more than six months prior to its termination on July 15, 1946. More than ten days prior to the termination of the lease, Estel P. Frank notified appellant that the lease would terminate on July 15, 1946 and that possession of the premises must be delivered by appellant on that date. Whatever might have been the original rights of the landlord, it is earnestly insisted by the appellant that the landlord has waived any right that she might have had to refuse the extension.

This case is only concerned with the rights of the parties relating to the extension of the lease for the additional period of two years. This means that a proper construction must be placed on the fourth paragraph of the lease. It seems clear that under this paragraph faithful and proper performance of all the agreements, terms and conditions of the lease by the tenant is made a condition precedent to the right to the extension. Accordingly questions relating to the forfeiture of the lease because of the happening of conditions subsequent and the waiver thereof are not involved.

So far as we are aware, the point now under consideration is novel in this state, but the courts of other jurisdictions appear to have uniformly held that nonperformance by the tenant will defeat his action to renew or extend. The rule is stated in 16 R.C.L. 891, § 394, as follows: "By express provision the Lessee's right to a renewal may be made dependent upon the performance by him of the covenants or agreements on his part contained in the lease. Thus where the Lessor has covenanted to renew in case the covenants on the Tenant's part, which include a covenant to keep the premises in repair, have been duly performed, keeping the premises in repair is a condition precedent to the obligation to renew."

■ The law is stated to like effect in 35 C.J. 1018, § 145, as follows: "Where the right to continue the tenancy, or the right of exercising an option to take a renewal is dependent upon the performance of covenants or conditions, performance of such conditions or covenants is a prerequisite to the exercise of the right to require a renewal, and non-performance will defeat the option. So the performance of the other covenants of the lease on the part of the Lessees may be expressly made a condition to their right to enforce a covenant for renewal against the Lessor."

■ It would be inequitable or improper to require a landlord to extend the lease when the tenant has proved to be an undesirable tenant and has violated covenants contained in the lease for the protection of the landlord, especially when performance is made a condition precedent to extension. In these circumstances strict performance is required by the tenant.

"And a performance which may serve to prevent a forfeiture of the lease is not the measure of performance required by a provision which makes faithful and legal performance the condition of an extension of a lease." 35 C.J. 1018, § 145.

■ It is claimed that acceptance of rent after default and the failure to assert other grounds of forfeiture are waived by the failure of the landlord to declare a forfeiture of the original lease. This is not in accordance with well-considered decisions.

"Nevertheless, the Landlord is not precluded from insisting upon the forfeiture of the right to renew by failing to declare a forfeiture of the original lease or by accepting rent after the breach of such covenants. The right to declare a forfeiture of the lease and the right to refuse to renew are separate and distinct." 35 C.J. 1019, § 145. Swift v. Occidental Mining & Petroleum Co., 141 Cal. 161, 74 P. 700; Jones v. Epstein, 134 Ark. 505, 204 S.W. 217.

■ We consider that the covenant to keep the furnishings and fixtures on the leased premises free of encumbrance is a valuable provision for the protection of the landlord. For example it helps to preserve the security of the landlord without conflicting claim or expense and it tends to enhance the credit rating and business standing of the tenant and so improves the position of the landlord. Not only did the tenant violate the covenant to keep the furnishings and fixtures on the leased premises free of encumbrances but even at the time appellant notified Estel P. Frank of the intention to exercise the right of extension, no offer was made to get the furnishings and fixtures released from the operation of the mortgages. Jones v. Epstein, 134 Ark. 505, 204 S.W. 217; authorities supra.

■ So far as the chronic failure of the tenant to pay its rent promptly and the giving of worthless checks in connection therewith is concerned, when the tenant comes into equity, he must do so with clean hands. Here it appears that the appellant has violated the covenants of the lease as to payment of rent with such frequency as to make it a general course of conduct. On numerous occasions appellant has given checks in payment of rent which were dishonored on presentation for insufficient funds. It does not seem that under these circumstances the landlord should be required to extend the lease in the face of the covenants in the lease. Darvirris v. Boston Safe Deposit & Trust Co., 235 Mass. 76, 126 N.E. 382, 16 A.L.R. 429; 32 Am.Jur § 897, p 760.

We conclude that the court acted correctly in overruling the demurrer to the cross-bill.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.