SKILLMAN et al., Respondents, v. LYNCH, Appellant

(50 N. W.2d 641)

(File No. 9205. Opinion filed December 28, 1951)

**Lacey & Perry,** Sioux Falls, for Appellant.
**Danforth & Danforth,** Sioux Falls, for Respondents.

SMITH, J. The lease involved in this action in forcible entry and detainer provides: "It is hereby agreed and understood by and between the parties hereto that this lease may be renewed and extended for one year at a time from its expiration, not to exceed four years, at no increase of the monthly rent, if all the conditions are otherwise agreeable to all parties hereto." Because gambling was permitted on the premises by the tenant the landlords refused to renew for the year commencing July 1, 1950. Whether by long acquiescence in gambling on the premises the landlords are estopped to predicate their refusal to renew on the ground that the tenants have permitted gambling on the premises is the question we are to consider.

By a lease dated April 1, 1946 the tenants rented a store room at 130 Main Avenue South in Sioux Falls for a term of one year from July 1, 1946 to be used as a cigar, tobacco and confectionery store at a rent of $60 a month. The lease contained the following covenants: "That said Lessee will not

keep or allow any liquors or beverages of an intoxicating nature or tendency to be sold, kept or tolerated on said premises, nor any gambling or other immoral practice" and "* * * if any intoxicating liquor, gambling or other immoral practices are allowed on said premises, * * * the said Lessee does hereby authorize and fully empower said Lessors or their agent to cancel and annul this lease at once, and to re-enter and take possession of said premises * * *." It contained the provision for renewal quoted supra.

Two card tables and some chairs have been maintained in the front part of the demised room for the convenience of the tenant's customers during all of his occupancy under this lease. More or less public petty gambling, the exact character of which is described in the evidence, has been permitted at these tables as a practice during all of this period. When this lease was made the tenant was in possession under a former lease and these tables and chairs were there in place as a part of the tenant's equipment.

As the initial term of one year was drawing to a close the landlords gave notice that they would not renew "as the conditions of said lease are. not agreeable to the undersigned". The tenant gave notice of renewal under his option. An action in forcible entry and detainer developed and resulted in a finding that conditions were as they had been when the lease was made and a conclusion and judgment that the tenant was rightfully in possession under the provision for a renewal.

Two subsequent renewals for one-year terms were thereafter permitted without question.

In the fall of 1949 the tenant's son, who assisted him in operating the business, was arrested on a charge of maintaining gambling equipment in the demised premises, and several other individuals were arrested at the same time for gambling on the premises. All of the described persons entered pleas of guilty as charged and paid substantial fines.

It is stipulated that the landlords accepted the monthly rental thereafter for the several remaining months of the term with full knowledge of the last described incidents. The public nature of the gambling indulged in by the ten-

ant's customers, and the frequent visits of the landlords' agent to the premises as their representative, requires the inference that during much of the occupancy under this lease, the landlords had knowledge of this gambling, and accepted the monthly rent, and permitted two renewals notwithstanding the breach of the covenant not to permit gambling.

The notice terminating the tenancy was predicated on the gambling out of which the charges and pleas of guilty above described arose.

It is the position of the tenant that the landlords by long acquiescence in gambling on the premises had impliedly promised that they would continue to find such conditions agreeable; that he had relied on their promise in the conduct of his business; that they are therefore estopped to ground a refusal to renew upon the described incidents.

The validity of the provision for a renewal has not been questioned by the landlords. Cf. Pulsifer v. Walker, 85 N. H. 434, 159 A. 426, 81 A.L.R. 1052.

 With knowledge of these convictions for maintaining gambling equipment and for gambling in the demised premises, the landlords accepted rent and thus elected to treat the lease as in force and to waive their right to forfeit the term for that particular breach of the covenant not to permit gambling in the premises. 52 C.J.S., Landlord and Tenant, § 724, page 586; Williston, Contracts, Rev.Ed., § 687, p. 1981; and Woollard v. Schaffer Stores Co., 272 N. Y. 304, 5 N.E.2d 829, 109 A.L.R. 1262, Anno. 1267. Such an election to waive the right to declare a forfeiture of a term because of a particular breach, in case of a lease providing for a renewal conditioned upon performance of the covenants of the lease, does not preclude a refusal to renew by the landlord predicated upon the identical breach. The right to declare a forfeiture and the right to refuse to renew are separate and distinct. 51 C.J.S., Landlord and Tenant, § 62-b, page 608; Gadsden Bowling Center v. Frank, 249 Ala. 435, 31 So.2d 648, 172 A.L.R. 1430, Anno. 1436. Cf. Saxeney v. Panis, 239 Mass. 207, 131 N.E. 331. By the provision in this lease for a renewal "if all the conditions are otherwise

agreeable to all of the parties" it was intended to invest the landlords with a right to refuse to renew if any reasonable ground existed for regarding the tenant's use of the premises disagreeable to the landlords. In our opinion the clause comprehends the right to refuse to renew because of a breach of a covenant of the lease, or because of an illegal use of the premises even though such use is not prohibited by the lease.

Thus we are brought to the substantial contention of the tenant. Assuming all we have so far said is sound, we understand the tenant to say that by long continued conduct, that is by repeated elections to waive a breach of the covenant not to permit gambling, and by repeated renewals notwithstanding such known breaches of covenant, the landlords have impliedly promised the tenant he could continue to permit gambling on the premises and they would continue to find that condition agreeable in dealing either with their right of forfeiture, or their right to refuse to renew; he has depended upon that promise in conducting his operations in the premises; and, after the event, the landlords are estopped to take a different position. Among the authorities cited to us in support of this contention are 51 C.J.S., Landlord and Tenant, § 339, page 1028; Tenth & Fifth, Inc., v. Arrowsmith, 186 Misc. 639, 59 N.Y.S.2d 239, affirmed 186 Misc. 864, 65 N.Y.S.2d 344; Hanson v. Hanson Hardware Co., 23 N. D. 169, 135 N.W. 766; and United States v. Ravitz, D. C., 93 F.Supp. 913. Cf. Weaver Bros., Inc. v. Newlin, D. C.Mun.App., 74 A.2d 65, 18 A.L.R.2d 877.

■■ We have concluded that the tenant is seeking to invoke the doctrine of promissory estoppel. That doctrine protects against that which resembles fraud. Williston, Contracts, Rev.Ed. § 689. To justify a court in enforcing such an implied promise as the tenant asserts the landlords have made by their long continued acquiescene it must appear that "* * * injustice can be avoided only by enforcement of the promise." Restatement, Contracts, § 90. Cf. Comment Note 115 A.L.R. 152.

■ A cursory glance at the facts evidenced by the record reveals that the change in attitude by the landlords in respect to a renewal was not made until they were con-

fronted by a new factor. Their acquiescence over the years was in gambling which, although admittedly illegal, did not affront the public conscience. In the fall of 1949, however, the use the tenant had been making of the premises induced a raid, a confiscation of some gambling equipment, and the conviction we have described. The landlords' conduct of the past does not supply a basis for the implication of a promise that they would find every character of gambling and every result of the use of the premises for gambling agreeable to them. To ascribe such magnified implications to the landlords' sufferance of petty gambling practices, and then to apply the doctrine of promissory estoppel thereto would be to employ that doctrine to do an injustice. We are firm in the conviction that the court did not err in refusing to hold that the landlords were estopped to assert their independent right to refuse to renew because of the convictions for gambling on the premises in the fall of 1949.

In view of the foregoing we deem the additional contentions of the tenant to be without sufficient merit to justify discussion.

The judgment of the trial court is affirmed.

All the Judges concur.