[No. 46959–8.   En Banc.   July 23, 1981.]

HINDQUARTER CORPORATION, *Respondent,* v. PROPERTY DEVELOPMENT CORPORATION, *Petitioner,* LLOYD DuBOIS, ET AL, *Respondents.*

*Eric Richter, John A. Roberts,* and *Skeel, Henke, Evenson & Roberts,* for petitioner.

*Allen Lane Carr,* for respondent.

UTTER, J.—Hindquarter Corporation sought a declaratory judgment establishing its right to exercise a lease renewal option. The trial court ruled that since Hindquarter had often been late in making its rental payments, Hindquarter's option was unenforceable. Finding that the payment of rent was not a condition precedent to the exercise of the option, the Court of Appeals reversed and remanded the case so that Hindquarter could be awarded damages for the landlord's failure to extend the lease. We reverse the Court of Appeals and affirm in part the judgment of the trial court.

In 1976, Property Development Corporation acquired certain realty, a portion of which was already leased to Hindquarter. The lease was for a term of 5 years commencing in August 1967, with an option for two additional 5–year periods. It required the lessee to perform all obligations promptly and pay rental charges when due.

Shortly after acquiring the realty, Property Development examined Hindquarter's history of delinquent rental payments and informed it that strict and timely performance of the lease obligations would thereafter be required. Subsequent to that letter, there were numerous late payments and 14 checks were returned for insufficient funds.

On July 7, 1977, Hindquarter sent Property Development a letter wherein it attempted to exercise the second 5–year option. The renewal was rejected and Hindquarter was given notice that its lease would terminate on August 29, 1977. As of that date, May rental for that year had not been paid and the August base rental was paid with a check returned for insufficient funds. Also, at the time of the trial, attorney's fees, as provided for in the lease, had not been paid.

At trial, the court dismissed Hindquarter's complaint, due to Hindquarter's uncontested failure to comply with its lease obligations, and granted a judgment for Property Development on its counterclaim for restitution. The trial court reasoned that Hindquarter's renewal right was implicitly and inherently dependent upon the timely payment of its rent.

The Court of Appeals, in an unpublished opinion, reversed the trial court, holding that nothing in the lease indicated that the exercise of the option was dependent upon Hindquarter's payment of rent. It concluded that where the payment of rent is not an express condition precedent to the exercise of an option, rental arrearages will not deprive a lessee of any renewal right.

Hindquarter argues that the renewal option was independent of the obligation to pay rent, because the lease did not specifically require that the tenant be in good standing at the renewal date. In the alternative, it asserts that, if good standing were a condition precedent, the only remedy for nonpayment of rent was contained in section 10.1 of the lease and since that remedy was not used, Hindquarter was never technically in default and hence the landlord in effect waived its right to deny the renewal. Section 10.1 provided:

> This lease is made on the condition that if any default by Tenant continues after written notice, in case of failure to pay rent for more than ten (10) days, or in any other case for more than thirty (30) days, and such additional time, if any, as is reasonably necessary to cure the default; . . . Landlord may in any of such events immediately, or at any time thereafter, and upon giving the notice required by law, make entry and repossess the leased premises as of the Landlord's former estate, without prejudice to any other remedies Landlord may have . . .

■■ The landlord's failure to utilize the notice and reentry procedure did not constitute a waiver of any right to deny renewal. The right to declare a forfeiture of the lease and the right to refuse to renew are separate and distinct. *Skillman v. Lynch*, 74 S.D. 212, 50 N.W.2d 641

(1951); *Gadsden Bowling Center, Inc. v. Frank,* 249 Ala. 435, 31 So. 2d 648, 172 A.L.R. 1430 (1947); *Borden Mining Co. v. H. & W.A. Hitchins Coal Co.,* 163 Md. 250, 161 A. 181 (1932). As stated in *Borden Mining,* at page 258:

> It is quite conceivable that the lessor may have resigned itself to enduring the delinquencies of that term and yet have resolved not to go into another lease, or not to decide the question of renewal until it should arise. It is true that upon a lessor's accepting a later rent he waives his right of re–entry by reason of delinquency in an earlier rent. As it was put in a leading English case on the subject, this is "because it is a contradiction in terms to treat a man as a tenant and then treat him as a trespasser." *Finch v. Underwood,* 2 Ch. Div. 310, 316. But the lessor does not by that action take any position, or make any waiver, on the future problem of renewal.

This rule was actually incorporated into the lease and agreed to by both parties. Lease provision 10.3 stated:

> No consent or waiver, express or implied, by Landlord to or of any breach of any covenant, condition or duty of Tenant shall be construed as a consent or waiver to or of any other breach of the same or any other covenant, condition or duty.

Consistent with that provision, the trial court specifically found that the landlord had not waived any of its rights. Since that finding has not been appealed to us, we are bound by it. *Pannell v. Thompson,* 91 Wn.2d 591, 589 P.2d 1235 (1979); *State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 586 P.2d 870 (1978).

The absence of a waiver distinguishes this case from others involving this issue. In both *Henry v. Bruhn & Henry, Inc.,* 114 Wash. 180, 195 P. 20 (1921), and *Spotts v. Westlake Garage Co.,* 116 Wash. 255, 199 P. 294 (1921), we found that the landlord had waived any right to refuse renewal. We have never, however, specifically determined when, if ever, payment of rent is a condition precedent to the exercise of a renewal option.

In reviewing this case, we are guided by the principles set forth in *Toellner v. McGinnis,* 55 Wash. 430, 104 P.

641 (1909). There we stated:

> "Covenants in an agreement will be construed as conditions precedent or as independent agreements, according to the intention of the parties and the good sense of the case, and technical words must give way to such intention. Therefore, in determining how to class covenants, the safest and best course is to ascertain what was the intention of the parties from the instrument they have executed, and then to give the covenants such a construction as will carry this intention into effect. If it appears, on the whole, that any substantial part of the agreement on one side is to be performed only on condition of performance on the other, the court is bound to construe the covenants accordingly, whatever may be the order in which they are placed in the instrument or the manner in which they are expressed."

*Toellner,* at 437, quoting L. Jones, *Landlord and Tenant* § 324 (1906). Applying those principles to this case, we conclude, after reviewing the entire lease and resorting to common sense, that Hindquarter's chronic failure to pay rent made its option unenforceable.

Section 2.2 of the lease provided that

> [t]he terms and conditions of this lease during said option periods shall be the same as those in effect at the time of the exercise of said options.

One of the lease's affirmative covenants was that the lessee would promptly pay the rent when due. Section 7.1(a).[1] Hindquarter had, under the existing term, breached that covenant with such frequency that the lessor could have concluded that notwithstanding Hindquarter's signature to the option, it would not or perhaps could not comply with the rental conditions. The lessee's pattern of conduct indi-

---

[1]Section 7.1 stated in pertinent part:

"Tenant covenants at its expense during the Lease Term, and such further time as Tenant occupies the leased premises, or any part thereof, to do the following:

"(a) To perform promptly all of the obligations of Tenant set forth in this Lease and in the Exhibits attached hereto, and to pay when due the Minimum Fixed Rent and the Percentage Rent and all charges, rates and other sums which by the terms of this Lease are to be paid by Tenant."

cated, at the time of the attempted renewal, that it was *in effect* not agreeing to the terms of the option. *See Gadsden Bowling*, at 439; *Jones v. Epstein*, 134 Ark. 505, 204 S.W. 217 (1918). Property Development was thus entitled to deny the renewal.

That the parties intended the prompt payment of rent to be a condition precedent to the renewal is also evident in lease section 9.3. It provided:

> Landlord covenants that Tenant, on paying the rent and performing Tenant's obligations under this lease, shall peacefully and quietly have, hold and enjoy the leased premises throughout the Lease Term, or until it is terminated as in this lease provided.

This provision conditioned the right to the lease and the premises on performing all the lease obligations, including the prompt payment of rent.

Moreover, the payment of rent is an implied condition for any lease renewal. *Nork v. Pacific Coast Medical Enterprises, Inc.*, 73 Cal. App. 3d 410, 140 Cal. Rptr. 734 (1977); *Klepper v. Hoover*, 21 Cal. App. 3d 460, 98 Cal. Rptr. 482 (1971); *see Lutterloh v. Patterson*, 211 Ark. 814, 202 S.W.2d 767, 769 (1947). In *Nork*, the lessee argued that its option to renew was an independent covenant and that it could exercise that option even though it had defaulted on its rental payments because the lease did not expressly state otherwise. That is essentially Hindquarter's argument and *Nork* rejected it, stating that

> payment of rent is an implied condition which must be satisfied in addition to other express covenants in the lease before the option can be exercised . . .

*Nork*, at 416.

We agree with the rule followed in California,[2] for it would be fundamentally unfair to require a landlord to

---

[2]The California rule, which we now adopt, is consistent with the evolving trend of applying contract, rather than conveyancing, rules to leases. Stoebuck, *The Law Between Landlord and Tenant in Washington*, 49 Wash. L. Rev. 291, 306–08 (1974). Covenants are independent according to conveyancing principles, but dependent under general contract rules. Stoebuck, *supra* at 306–07.

renew a lease when rental payments are uncertain. The primary consideration for any lease is the rent to be paid and its nonpayment substantially undermines the basis for the agreement. As stated in *Gadsden Bowling,* at page 439:

> It would be inequitable or improper to require a landlord to extend the lease when the tenant has proved to be an undesirable tenant and has violated covenants contained in the lease for the protection of the landlord . . .

This is not a case where the landlord excused the defaults and then chose to assert them when such suited its purposes. That was the problem in *Henry* and *Spotts.* Instead, the trial court found that Property Development had never waived the defaults. As a result, we conclude that it was entitled to deny the attempted renewal.

The judgment of the Superior Court is therefore affirmed except to the extent that it awarded attorney's fees to the landlord for litigating the renewal issue. The terms of the lease authorized attorney's fees only for curing defaults, and the award of fees should reflect only those services rendered toward that end.

The judgment of the Court of Appeals is reversed and that of the trial court affirmed as modified.

BRACHTENBACH, C.J., and STAFFORD, DOLLIVER, HICKS, and DIMMICK, JJ., concur.

ROSELLINI, J. (dissenting)—The majority opinion in this case has effectively rewritten the terms of a lease to accommodate the assignee of the landlord's interest. It is obvious that the petitioner, had it been the author of the lease, would have made time of the essence with respect to the payment of rent and would have conditioned the exercise of the options upon the timely payment of the rents as they fell due. It would also have conditioned the renewals upon the prospering of the tenant's business. But those are not the terms to which the original landlord assented and by which its assignee is bound. Nowhere in the lease is time made the essence of it, and there are no express conditions

attached to the right to exercise the renewal options.

The lease which forms the subject matter of this controversy was given for the purpose of establishing and conducting a restaurant and bar business upon the premises, which were part of a shopping center operated by the landlord. Under its terms, the tenant, as well as the landlord, was required to contribute to the costs and participate in the making of improvements which would adapt the premises to that purpose. This work was done, and the business was conducted thereafter as the Hindquarter Restaurant.

Under the lease, which was executed in August 1967, rentals based on square footage were payable monthly, with an additional contingent rental based on a percentage of sales to be paid yearly. It was evidently contemplated that late payments would be tolerated, for the lease contained the following provision with respect to forfeiture:

Section 10.1 Default

This lease is made on the condition that if any default by Tenant continues after written notice, in case of failure to pay rent for more than ten (10) days, and such additional time, if any, as is reasonably necessary to cure the default; . . . Landlord may in any of such events immediately, or at any time thereafter, and upon giving the notice required by law, make entry and repossess the leased premises as of the Landlord's former estate, without prejudice to any other remedies Landlord may have . . .[3]

If this provision were open to construction, it would be the duty of the court to construe it against the landlord, since he was not obliged to make any concessions which did not suit his purposes. The rule is that the courts will not extend nor enlarge the obligation of a lease beyond the plain meaning of the language used and the intention existing at the time the lease was made, and ambiguities must be resolved in favor of the tenant. *Puget Inv. Co. v. Wenck,* 36 Wn.2d 817, 221 P.2d 459, 20 A.L.R.2d 1320

[3]The landlord's "other remedy" would be to sue for the rent owed. *See* Restatement (Second) of Property § 12.1 (1977).

(1950); 51C C.J.S. *Landlord and Tenant* § 232(2), (12) (1968). It is not suggested that this lease was prepared by the tenant.

However, there is no room for construction here. The provision plainly makes the landlord's right of forfeiture depend upon its having given the specified notice of demand. Twice in the course of the petitioner's tenure as landlord, it gave such notice to the respondent, and it appears that on both occasions, the arrearages were paid within the designated time.

Undoubtedly, the record shows a pattern of late rental payments; but this was a burden the landlord consented to bear until such time as he should see fit to demand the correction of the default. When the petitioner took its assignment of the lease in March 1976, however, the respondent was not in default.

With respect to the options to renew, these were granted in very plain language, unadorned by conditions or covenants on the part of the tenant. Section 2.2, entitled "Term", contains the sole provisions with respect to the option:

This lease shall be for an initial term of five years with two additional five year options to run successively, the first five year option to be exercised by notice thereof in writing not later than 30 days prior to the expiration of the first five year term and the second option to be exercised by notice thereof in writing not later than 30 days prior to the expiration of the first five year option period. The terms and conditions of this lease during said option periods shall be the same as those in effect at the time of the exercise of said options.

When the first option was exercised in September 1972, the landlord (petitioner's predecessor) granted an additional option to renew for a period of 10 years following the expiration of the second renewal term. Again, no conditions were attached to the exercise of the option. On the other hand, the landlord granted the tenant a right of first refusal to lease an equal or greater amount of space upon the same terms, should the landlord elect to construct replacement facilities involving the leased areas.

Thus, we do not have before us a lease in which the right to exercise an option to renew is conditioned upon the faithful performance of all the other terms and conditions of the lease, including the prompt payment of rent. Such a condition would, in fact, have been out of harmony with section 10.1, which made allowance for the toleration of late payments. Such a provision as section 10.1 is not an unusual one. It is in accord with the general rule, as expressed in the Restatement (Second) of Property § 12.1 (1977) which permits the landlord to terminate the lease for nonpayment of rent only after having made demand on the tenant for the rent that is due and having failed to receive prompt payment thereafter.

This provision also would most likely find favor with Professor Friedman, who, in his treatise on leases, says:

> If a right to renew is conditioned on the tenant's not being in default, it should be clear that the renewal right is to be lost only if the tenant remains in default beyond any time given the tenant in the lease or by law otherwise to cure the default in question.

(Footnotes omitted.) 2 M. Friedman, *Leases* § 14.1, at 552–53 (1974). Professor Friedman also remarks in that section that few tenants pay rent promptly on the day that it is due and few landlords expect it.

Inasmuch as the lease before us does not condition the right to renew upon the prompt payment of rent and provides its own remedy for default, cases relied upon by the majority are not in point. In three of them, the right was expressly conditioned.

In *Skillman v. Lynch*, 74 S.D. 212, 213, 50 N.W.2d 641 (1951), the lessee was given the right to renew "if all the conditions [were] otherwise agreeable to all parties". The court held that this language indicated an intention to endow the lessor with a right to refuse renewal if any reasonable ground existed for regarding the tenant's use of the premises as disagreeable to him. Illegal use of the premises for gambling was held to be a sufficient ground, even though such use was not prohibited by the lease.

In both *Gadsden Bowling Center, Inc. v. Frank*, 249 Ala. 435, 31 So. 2d 648, 172 A.L.R. 1430 (1947) and *Borden Mining Co. v. H. & W.A. Hitchins Coal Co.*, 163 Md. 250, 161 A. 181 (1932), the lease in question expressly conditioned the option to renew upon the faithful performance of the covenants. These cases stand for the proposition that where the right to renew is expressly conditioned on faithful performance, waiver of the right to declare a forfeiture, by accepting rental payments after default, does not constitute a waiver of the right to refuse renewal. This is the general rule. 2 H. Tiffany, *Landlord and Tenant* § 225 (1910); 51C C.J.S. *Landlord and Tenant* § 62(1)(b) (1968); Annot., *Right To Exercise Option To Renew or Extend Lease as Affected by Tenant's Breach of Other Covenants or Condition*, 172 A.L.R. 1436 (1948). The reason given for it is that the landlord may be willing to tolerate defaults during the term of the lease, but at the same time unwilling to relinquish his right to refuse renewal for these same defaults. The rule is sound as applied to the leases which were under consideration, but it has no application here.

Thus, the emphasis placed by the majority upon the trial court's holding[4] that there was no waiver is unwarranted. We are here concerned with the question whether, under the terms of the lease, the landlord had a right to refuse renewal because of past defaults. If it had no such right— and I can find none within the four corners of the lease nor in the circumstances under which it was executed (insofar as those circumstances have been revealed to us)—then there was nothing for the landlord to waive.

The parties to this lease took into account the possibility of default in the performance of the tenant, and they made provision for the landlord's remedy in case of default. In such event it could declare a forfeiture, but only if the default was not cured within a specified time after demand for performance was made. When in 1977 the respondent

---

[4]Although denominated a "finding", the fact that late payments were accepted was not in dispute; thus the "finding" is actually a conclusion of law.

notified the petitioner that it exercised its option to renew, it had not paid the rent for May and August. Instead of demanding that the arrearages be paid, the petitioner advised the respondent that, because of its "long and continuing history of defaults under the subject lease", the lease would not be renewed. In doing so, it arrogated to itself a remedy not contemplated by the parties to this lease.

The majority has also unearthed a few cases in which the courts have found a covenant to renew to be impliedly dependent upon due compliance of the lessee with other covenants in the lease. Two of those cases, *Nork v. Pacific Coast Medical Enterprises, Inc.,* 73 Cal. App. 3d 410, 140 Cal. Rptr. 734 (1977) and *Klepper v. Hoover,* 21 Cal. App. 3d 460, 98 Cal. Rptr. 482 (1971), decided by the California Courts of Appeal, state it as a rule that there is such dependency between the covenants. While both of these cases declare the rule to be that payment of rent is an implied condition which must be met in addition to other express covenants in the lease before the option can be exercised, neither is persuasive authority for that proposition. *Nork* made no attempt to examine or interpret the lease. It cited one case, *Klepper v. Hoover, supra* (a declaratory judgment action not involving attempted exercise of an option but rather the validity of a lease). *Klepper* in turn cited *Behrman v. Barto,* 54 Cal. 131 (1880) and *Streicher v. Heimburge,* 205 Cal. 675, 272 P. 290 (1928). In *Behrman* the option was expressly conditioned on the lessees not being in default. *Streicher* was a case in which the lease provided that the rent for the renewal term should, in case of disagreement, be set by arbitrators. The court held that fixing the rent was not a condition precedent to renewal of the lease. The opinion concluded by distinguishing cases from other jurisdictions relied upon by the landlord, noting that these cases were to the effect that the affirmative conditions of the old term must be met before the new term vests.

The California rule, as stated in 42 Cal. Jur. 3d § 290

(1978), is that where a lessee's right to renew is dependent upon his performance of covenants or conditions contained in the lease, the nonperformance or breach thereof will defeat his right to renew the lease.

The Arkansas case, *Lutterloh v. Patterson,* 211 Ark. 814, 202 S.W.2d 767 (1947), was grounded upon a finding that there had been a material breach of the conditions of the lease, evidently a breach not curable or compensable. None of these cases dealt with a lease which provided its own remedy for defaults, as is the situation here.

While I see no reason to decide that question here, I would certainly concede for purposes of argument that a court can reasonably conclude that a material and incurable breach would be grounds for refusing to renew, even though, as here, compliance with the terms of the lease is not expressly made a condition precedent to exercise of the option. Were there such a breach, it would be surprising if the landlord did not exercise his right to declare a forfeiture, since by definition the breach could not be cured within the time provided in the lease. In that case there would be no need to search for an implied limitation on the right to renew. But it is obvious that the landlord who prepared this lease did not consider mere delay in performance a material breach, unless that delay was continued longer than the specified number of days after demand for performance.

It is the rule in this state that where the payment of rent is not expressly declared to be a condition precedent to the exercise of an option, the mere fact that the lessee is in arrears for rent when the option is exercised does not deprive the lessee of the right to the option. *Henry v. Bruhn & Henry, Inc.,* 114 Wash. 180, 195 P. 20 (1921).[5] This is the case relied upon by the Court of Appeals in reversing the trial court here. The majority has not seen fit to overrule it. That rule is in accord with the manifest intent of the lease here. That intent was to permit the

---

[5]*See also Keene v. Zindorf,* 81 Wash. 152, 142 P. 484 (1914).

landlord to declare a forfeiture if the tenant failed to make good any default within the time limited after demand was made upon him, and to deny to the landlord the right to refuse an option to renew where the lease had not been forfeited at the time of its exercise.

I would affirm the decision of the Court of Appeals.

WILLIAMS and DORE, JJ., concur with ROSELLINI, J.

Reconsideration denied October 23, 1981.