Samuel BROWN, Ronald Brown, Harold Kapelovitz, Ken Jeung, Michael Cooper, Robert Rifkin, Gerald Kernie and Gary Mosko, Individually and d/b/a Evans Joint Venture, Petitioners,

v.

Kent HOFFMAN and Gary Levinson, Respondents.

No. 79SC218.

Supreme Court of Colorado, En Banc.

May 18, 1981.

As Modified on Denial of Rehearing June 8, 1981.

Hobbs & Waldbaum, P. C., Leonard N. Waldbaum, William E. Brayshaw, Denver, for petitioners.

Bernard D. Morley, Denver, for respondents.

LEE, Justice.

Petitioners, doing business as Evans Joint Venture (lessors), challenge the holding of the court of appeals denying them possession of their premises which had been leased to respondents, Kent Hoffman and Gary Levinson (lessees). *Hoffman v. Brown*, 42 Colo.App. 444, 599 P.2d 959 (1978). We reverse in part and affirm in part.

On June 4, 1974, lessees and lessors' predecessor in interest entered into a lease of space in a building located on East Evans Avenue in Denver, Colorado. The premises were to be used by lessees for their karate school. The term of the lease was three years beginning July 31, 1974. In pertinent part, the lease provided:

> "[Rent shall be payable], in advance, on or before twelve o'clock noon, on the first day of each calendar month during said term * * * without notice. Lessees shall * * * furnish lessor with a deposit of $1,475.00 to secure full and timely performance of all terms and conditions of the contract * * * [I]f lessees are in default, lessor may use so much of said security deposit as is necessary to cure such default and thereafter return the remainder * * *.
>
> *     *     *     *     *     *
>
> "It is expressly understood and agreed, by and between the parties aforesaid, that if the rent above reserved, or any part thereof, shall be in arrears, or if default shall be made in any of the covenants or agreements herein contained, to be kept by the said lessees, it shall and may be lawful for the said lessor to declare said term ended, and enter into the said premises, or any part thereof, either with or without process of law * * *.
>
> *     *     *     *     *     *
>
> "It is further expressly understood and agreed by the parties hereto that: * * * (4) Lessor will pay all real property taxes on the demised premises provided, however, that in the event of an increase in real property taxes, the increase, pro-rated according to land and floor space occupied shall be added to the annual rent, reduced to monthly installments * * *.
>
> *     *     *     *     *     *
>
> "And it is further expressly understood and agreed that all the covenants and agreements in this lease contained shall extend to and be binding upon the heirs, executors, legal representatives and assigns of the respective parties hereto."

By letter dated June 4, 1974, the parties agreed that the lessees would have the right to renew the lease for an additional period of not more than five years at a rental "to be determined by the change in the Consumer Price Index."

On February 28, 1975, the parties executed an addendum to the lease. The addendum recited: "That in consideration of the keeping and performance of the covenants and agreements set forth in the indenture [lease] hereinabove referred to and which are incorporated herein by reference and hereinafter set forth, and the payment of the rent hereinafter stated by the lessees, * * *" the lessor leased to the lessees additional space. The addendum further provided for an option to renew as follows:

> "IT IS FURTHER AGREED that the LESSEES shall have the option to renew the indenture including this addendum for an additional period of five consecutive years under the same terms and conditions, except the rental for each space described shall be increased by an annual amount determined by the amount of increase in the Consumer Price Index promulgated by the U.S. Bureau of Labor Statistics based on the increase between the date of the execution of the indenture and the effective date of the exercise of the renewal option. This provision supersedes that letter agreement between the LESSOR and the LESSEE dated June 4, 1974. The LESSEES shall exercise this option to renew by notice to the LESSOR in writing at the address stated herein, not less than thirty days prior to the end of the lease period."

On May 6, 1977, the lessors gave notice by letter that the lessees were considered to be in breach of the lease for several reasons,

among which was the lessees' failure to comply with the requirement that they pay their prorated share of the increase in the real property taxes. The lessees were advised that the taxes had increased for the years 1975 and 1976 and that the lessees owed eleven percent of the increase, or a total of $777.58, and that if that amount was not paid the owners [lessors] would terminate the lease. Lessees claimed that they had only leased ten percent of the space in the building and, thus, were only liable for that percentage of the increased taxes. However, they failed to tender the amount of taxes they admittedly owed, and refused to pay any sum whatsoever.

On June 3, 1977, more than thirty days before the end of the primary term, lessees notified lessors that they were exercising their right to renew the lease for an additional five-year period. Lessees paid June and July base rent, without any amount for increased taxes. The July rental payment was not timely made.

On July 1, 1977, the lessors served the lessees with a notice terminating the lease as of July 31, 1977, the end of the initial term of the lease, requiring the lessees to vacate and surrender the premises on or before that date.[1] The lessees refused to do so and on July 28, 1977, filed this action seeking a declaratory judgment as to the status of the lease. The lessors counterclaimed, asking for a declaration that the lessees were in violation of the terms of their lease and not entitled to possession, for a writ of restitution, for judgment for unpaid taxes, for compensatory and exemplary damages, and for attorneys' fees and costs.[2]

After trial to the court, the district court entered extensive findings of fact, conclusions of law, and a judgment in favor of the lessors.[3] In summary, the court found that, although the lessees were notified by letter dated May 6, 1977, that the taxes on the leased premises had increased $3,551.09 during the year 1975 and $3,517.18 during the year 1976; that they had not paid their prorata share as required by the lease; that the rental space occupied by the lessees was only ten percent of the premises and the lessees were therefore obligated to pay as additional rent ten percent of the increase in taxes; and that lessees' failure to pay the additional rent was willful and intentional, with knowledge that they were in arrears for the additional rent accrued; and that the breach of the covenant to pay rent was substantial.

The district court concluded as a matter of law that the lessees had no right to possession of the premises. The court held that, although the lessees may have believed in good faith that they owed only ten percent of the increase in taxes as additional rent, they were not excused from tendering the ten percent rent increase and that the filing of the declaratory judgment action did not excuse the nonperformance by the lessees. Further, the court concluded that the consideration for the lease, of which the option was a part, was the payment of the rent and the keeping of the covenants. Since the breach by the lessees was intentional and substantial, the court concluded it was willful and, therefore, the lessees had no right to renew the lease.

The court entered a judgment for possession of the premises and for the additional rent due attributable to the tax increase.

1. Also, the lessors served a three-day notice demanding the payment of rent or possession of the premises. The district court found that this demand for payment of rent or possession was ineffectual and would have been insufficient had the action before it been one of forcible entry and detainer.

2. For reasons not explained in the record, the lessors, in August 1977, brought a separate action in the district court asking in essence for the same relief sought in their counterclaim. This separate action was consolidated with the

instant action by order entered September 26, 1977.

3. The record does not contain a transcript of the testimony. We presume, as we must in these circumstances, that the findings of fact are supported by the evidence. *People v. Morgan,* Colo., 606 P.2d 1296 (1980); *Furer v. Allied Steel,* 174 Colo. 171, 483 P.2d 212 (1971); *Uptime Corp. v. Colorado Research Corp.,* 161 Colo. 87, 420 P.2d 232 (1966).

The court denied the lessors' claim for damages, based upon various other alleged breaches of the lease, for want of sufficient proof. The court also denied the lessors' claim for attorneys' fees. The court delayed implementation of its order pending appeal and ordered lessees to pay rent at the rate set in the original lease plus any monthly adjustment for increased taxes.

The court of appeals, in a divided opinion, reversed. *Hoffman v. Brown, supra.* It held that the only condition to the exercise of the option to renew was that lessees give lessors thirty days notice of intent to renew. Since lessees had done this, the court of appeals found the renewal was valid and the lessees were entitled to possession. However, it remanded the case to the district court for a more precise finding on the rental rate to be paid by lessees during the renewal period.

I.

The principal issue is whether there was a valid exercise by the lessees of the option to renew the lease for an additional term of five years, as the court of appeals decided.

We do not agree with the court of appeals' construction of the terms of the lease, which held that the only condition to the exercise of the option to renew was the giving of a thirty-day written notice prior to the end of the initial term of the lease. As thus construed, the granting of the option to renew was totally independent of the performance by the lessees of the covenants of the lease, including the payment of the rent reserved to the lessors.

■ A lease, like other contracts, is to be reasonably interpreted according to the apparent intention of the parties. *Ruston v. Centennial,* 166 Colo. 377, 445 P.2d 64 (1968). As we construe the addendum to the lease containing the renewal option, which specifically superseded the letter agreement of June 4, 1974, the option was granted "in consideration of the keeping and performance of the covenants and agreements" of the lease. The express incorporation into the addendum by reference of all of the terms and conditions of the

original lease not inconsistent with the addendum fortifies this interpretation. Under this construction of the lease, including the addendum, the right to exercise the option was not an independent covenant, but rather was dependent by implication upon the lessees' faithful "keeping and performance of the covenants and agreements" expressly undertaken by the lessees, the breach of which specifically authorized the termination of the lease by the lessors.

■ It is axiomatic that where a lessee's right to renew is dependent upon the performance of the covenants or conditions contained in a lease, the nonperformance of the covenants or conditions defeats the right to renew the lease. It has been held that, even though the specific grant of an option to renew a lease contains no express language making its exercise dependent upon the payment of rent, or the performance of other covenants of the lease, the right to renew may be dependent by implication upon the faithful performance of the covenants of the lease, the nonperformance of which will preclude the exercise of the right to renew. *Felder v. Hall Bros. Co.,* 151 Ark. 182, 235 S.W. 789 (1921); *Jones v. Epstein,* 134 Ark. 505, 204 S.W. 217 (1918); *Nork v. Pacific Coast Medical Enterprises, Inc.,* 73 Cal.App.3d 410, 140 Cal.Rptr. 734 (1977); *Klepper v. Hoover,* 21 Cal.App.3d 460, 98 Cal.Rptr. 482 (1971); *Behrman v. Barto,* 54 Cal. 131 (1880); *Skillman v. Lynch,* 74 S.D. 212, 50 N.W.2d 641 (1951); *see* Annot., 172 A.L.R. 1436 (1947).

■ Thus, in deciding the issue before us, we do not find it to be determinative that the specific language of the option paragraph of the addendum to the lease does not expressly condition its exercise upon the payment of rent. We are guided by all of the terms of the lease and particularly the lessees' undertaking to perform all of the covenants of the lease, which is the consideration for the demise including the option to renew. As thus read, we believe that it was the intention of the parties to permit a renewal of the lease only if the lessees kept and performed all covenants and agree-

ments of the lease, including the payment of rent, a default in which by the express terms of the lease authorizes the lessors to terminate the lease. We find no language in the lease which indicates that the parties intended a contrary result.

We hold that the lessees' right to renew the lease here under consideration was dependent by implication upon the faithful performance of the covenant to pay rent. The district court found that the lessees' failure to pay the required rent was intentional and willful, and was a substantial breach of the lease, which precluded the lessees' exercise of the option to renew. We agree with this holding.

## II.

■ Lessees argue, however, that they were not in default under the lease agreement. The district court found to the contrary and this finding is supported by the record. The lease required the lessees to pay increased rent to compensate for any increases in real property taxes. Lessees agreed to pay that portion of the increase attributable to the percentage of floor area they leased in relation to the floor area of the entire building. The lessees were informed by lessors that they owed eleven percent of the increased property taxes, which amounted to $775. Lessees disputed the percentage. However, although they admitted owing ten percent of the increased property taxes, they did not tender any part of the increased taxes whatsoever. Instead, more than two months after notice of increased rent due, lessees filed this action for declaratory judgment. The filing of an action for declaratory judgment is no substitute for a good faith tender of that portion of the increase which was undisputed. *See Miller v. Carmody*, 152 Colo. 353, 384 P.2d 77 (1963).

■ The district court found that the default was substantial as a matter of fact. *Little Thompson Water Assoc. v. Strawn*, 171 Colo. 295, 466 P.2d 915 (1970). We may not disturb this finding unless it is manifestly erroneous or actuated by passion or prejudice. *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970). We find no grounds to overturn the finding in this case.

Therefore, there was a default in lessees' performance and that default was substantial. Since compliance with terms of the lease was an implied condition to the exercise of the option, the option could not be exercised and the lessees' term ended on July 31, 1977.

## III.

■ The district court concluded that the lessors were entitled to possession of the premises, and entered a judgment for restitution and for rent attributable to the increase in taxes. The court stayed the issuance of the writ of restitution pending appeal, subject to the conditions, among others, that the lessees pay as rent during their occupancy the basic rent together with ten percent of the tax increase. It found there was insufficient proof as to the going rate for comparable space and rejected the lessors' demand for an increase in the rent based on the going rate. In this regard, the court erred.

Both parties and the court below recognize that the proper measure of rental payments is the fair rental value of the property. *Strauss v. Boatright*, 160 Colo. 581, 418 P.2d 878 (1966); *see also Merkowitz v. Mahoney*, 121 Colo. 38, 215 P.2d 317 (1949). The rental provisions in the addendum clause granting the renewal option required an adjustment based on the increase in the Consumer Price Index promulgated by the U. S. Bureau of Labor Statistics.

There was evidence before the court, and the court so found, that the Consumer Price Index had increased between twenty-one and twenty-four percent. This evidence should have been considered by the court as some evidence of the fair rental value as contemplated by the parties when the addendum was executed. The exact amount of the increase in the Consumer Price Index should have been determined and should have been allowed, along with the increase in taxes, in computing the rent payable pending this appeal. We affirm the order of the court of appeals remanding for a determination of the proper amount of rent due pending these appellate proceedings

and the entry of an appropriate judgment as directed by the court of appeals.

### IV.

■ Lessees argue that lessors have no right to retain their security deposit, as held by the court of appeals, since the lease was terminated on July 31, 1977. The lease provided:

"Upon expiration of this Lease, or any extension thereof, and provided that LESSEES are not then in default under any conditions or terms, all of the security deposit shall be returned, but if LESSEES are in default, LESSOR may use so much of said security deposit as is necessary to cure such default and thereafter return the remainder."

Thus, until the lessees' possession is actually ended and any default, other than the payment of rent, under the terms of the lease has been determined and cured, the lessors are not obligated to return the security deposit. We affirm the ruling of the court of appeals concerning the security deposit.

The judgment is reversed in part and affirmed in part.