Robert N. HIEB and Mary Haas, Plaintiffs and Appellees,

v.

Adolph JELINEK, Defendant and Appellant,

and

Leonard Jelinek and Jeff Jelinek, Defendants.

Civ. No. 920200.

Supreme Court of North Dakota.

Feb. 23, 1993.

Steven J. Lies of Lies, Bullis and Grosz, Wahpeton, for plaintiffs and appellees.

Adolph Jelinek, pro se.

VANDE WALLE, Chief Justice.

Adolph Jelinek appealed from an amended judgment of the Richland County Court which evicted Adolph Jelinek, Leonard Jelinek, and Jeff Jelinek, as lessees, from real property owned by lessors Robert Hieb and Mary Haas. The amended judgment ordered that the Jelineks surrender possession of the property, pay back rents and interest, and remove a millet crop they had planted on the property. We affirm.

On December 1, 1989, Hieb and Haas leased their neighboring farmlands in Richland County, North Dakota, to Adolph and Leonard for a term of two years terminating on December 1, 1991. Four payments at specified time intervals were called for by the lease, the last being due on November 1, 1991. If any lease payment was not tendered when due, the lease agreement called for interest to be assessed at 12% per annum on the unpaid amount of the overdue payment.

In 1990, without the knowledge of Hieb or Haas, Adolph and Leonard sublet the property to Jeff, Adolph's son, despite the wording of the lease which stated that it "shall not be assignable" without the written permission of Hieb and Haas.

The first two lease payments were apparently paid by Adolph or Leonard. Jeff

issued a rental check to Hieb for the third lease payment. After the final, November 1, 1991, lease payment was past due, Hieb and Haas served a "Notice of Intent to Evict, Terminate Lease and Re-enter to Recover Possession of Leased Property" on Adolph, Leonard, and Jeff on January 14, 15, and 16, 1992, respectively. On January 24, 1992, a complaint was filed against Adolph, Leonard, and Jeff for eviction, back rent, interest, and removal of the millet crop they had planted on the property. The county court held in favor of Hieb and Haas on all issues, and Adolph appealed.[1]

Rule 10(b) of the North Dakota Rules of Appellate Procedure states that it is the appellant's responsibility to order a transcript of the proceedings below so we may more fully understand the facts of the case and the rationale for the trial judge's decision. Adolph has not furnished a transcript of the proceedings below. He assumes the consequences and risks of failing to do so, as he has the burden of demonstrating that the findings of the trial court were clearly erroneous. *Rosendahl v. Rosendahl*, 470 N.W.2d 230 (N.D.1991). Without a transcript, we can review only the briefs and record to make a "meaningful and intelligent" decision regarding the outcome of this case. *Cullen v. Williams County*, 446 N.W.2d 250 (N.D.1989).

### I.

 Adolph contends that the Richland County Court lacked both personal and subject-matter jurisdiction over the case because there were no references to jurisdiction in the complaint, orders, or judgments. The subject-matter jurisdiction of county courts is codified at section 27–07.1–17, NDCC; and those over whom a county court may exert personal jurisdiction is provided for by Article VI of the North Dakota Constitution, and Chapters 27–01 and 27–07.1, NDCC. We have consistently held that, with limited exceptions,

county courts are empowered with the subject-matter jurisdiction to hear eviction actions and those claims associated with them. *Farm Credit Bank of St. Paul v. Brakke*, 483 N.W.2d 167 (N.D.1992); *United Bank of Bismarck v. Trout*, 480 N.W.2d 742 (N.D.1992); *Farm Credit Bank of St. Paul v. Martinson*, 478 N.W.2d 810 (N.D.1991); *South Forks Shopping Center v. Dastmalchi*, 446 N.W.2d 440 (N.D.1989). Because the action was one for damages and eviction from property located in Richland County, the subject-matter jurisdiction of the Richland County Court was established. NDCC §§ 27–07.1–17(1)(d), 33–06–01. Similarly, because Adolph, Leonard, and Jeff were physically present and served within Richland County, the personal jurisdiction over them was established.

 A court need not make specific findings as to jurisdiction or cite to case law or statutory authority if no contest to jurisdiction was presented. The jurisdiction of a court which renders a decision is presumed to have been regularly and validly entered into, and we will not inquire into the jurisdiction of a court unless the lack of jurisdiction is obvious from the face of the judgment. *See Lende v. Wiedmeier*, 179 N.W.2d 736 (N.D.1970); *Bartell v. Morken*, 65 N.W.2d 270 (N.D.1954). We conclude that the Richland County Court had personal jurisdiction of the parties and subject-matter jurisdiction of this action.

### II.

 Adolph contends that the venue of the action was improper. Venue, "the place of trial," imports the principle that a party generally has the right to have an action tried in the proper county *Selland v. Selland*, 494 N.W.2d 367 (N.D.1992). The venue of actions relating to real property must be in the county where the property is located. NDCC § 28–04–01. The property which Adolph leased is located in Rich-

---

1. At oral argument, Adolph stated he was also representing Leonard and Jeff. Under section 27–11–01, NDCC, a person may not practice law, act as an attorney or counselor at law, or defend in court any action in which the person is not a party in this state without a certificate of admission to the bar and payment of annual license fees. Although this section does not prohibit Adolph from representing himself at the oral argument, it does prohibit him from representing Leonard and Jeff. Their interests appear identical, however.

land County. The proper venue was Richland County Court. *Stonewood Hotel v. Davis Development*, 447 N.W.2d 286 (N.D. 1989).

We have no record indicating Adolph took issue with venue at the trial level. The action was properly venued in this case.

### III.

Adolph contends that the trial court erred because it did not specify any form of law in its orders or judgments. The laws relating to the form and contents of judgments are contained in Rule 54, NDRCivP and Title 32, NDCC. Neither of these sources requires the trial court to specify or cite to statutes, rules, or case law when entering orders or judgments—although it is helpful to the appellate process to do so.

### IV.

■ Adolph's next contention involves Paragraphs One and Six of the lease contract. These paragraphs read:

"1. ... That in the event said cash rent is not paid when due interest shall accrue on the unpaid amount at 12% from the due date."

\* \* \* \* \* \*

"6. Upon the expiration of this lease, the parties of the second part shall have the first option of renewing it on whatever terms the party of the first part shall offer the same for and if the parties of the second part decline to renew it on said terms,. the party of the first part may lease the same to such other party as he may select."

Although he did not tender the final lease payment, Adolph asserts that Hieb and Haas breached the lease because they failed to comply with its renewal provisions. He contends that Paragraph Six, read with Paragraph One, envisioned a possibility of delinquent rental payments. If a payment was delinquent, the lease remained in effect, and, according to Adolph, the landlord's only remedy would be a 12% per annum penalty on the overdue payment amount. Adolph rationalizes that because Hieb and Haas did not offer the option to renew upon the expiration of the lease's two-year term, Hieb and Haas first breached the lease contract. Hieb and Haas, on the other hand, contend that the Jelineks breached the lease by not tendering the November 1, 1991 lease payment, so they were under no obligation to extend to them the right of first refusal to relet the property.

The trial court found that the Jelineks did not pay the rent which was due on November 1, 1991. Paragraph One of the lease states that Adolph and Leonard "shall pay" $2,583.75 on November 1, 1991 to Hieb and Haas. As an express condition of the lease, Paragraph Eight reads:

"8. That the violation of any of the terms of the Contract and Lease shall result in the same being declared null and void by the party of the first part and any payments or improvements made on said real estate by the parties of the second part shall be forfeited to the party of the first part as liquidated damages."

■ Because the rent was not paid, Hieb and Haas could treat the lease as null and void in accordance with Paragraph Eight, thus allowing them two remedial options.[2] They could commence an eviction

---

**2.** The nonpayment of rents does not ipso facto operate as a forfeiture of the lessee's term or as a termination of the lease contract. *Village Development Co., Ltd. v. Hubbard*, 214 N.W.2d 178 (Iowa 1974). In general, a lease cannot be forfeited or nullified unless it contains an express termination clause which allows termination for breach of a lease condition. *Johnson v. Hamill*, 392 N.W.2d 55 (N.D.1986). Because the prompt tendering of rent was an express condition of the lease contract, and because

Adolph failed to promptly tender the November 1, 1991 payment, the express termination clause (Paragraph Eight) allowed Hieb and Haas the election to declare the lease null and void. *Bank of America Nat. Trust & Savings Ass'n v. Moore*, 18 Cal.App.2d 522, 64 P.2d 460 (1945) [lease provision that declares lease null and void if lessee fails to pay rent after payment becomes due does not automatically nullify the lease, but only allows lessor the option to declare it null and void].

action through Chapter 33–06, NDCC,[3] or they could wait until the natural expiration of the lease on December 1, 1991 and refuse to relet the property. They chose the latter, but when the Jelineks refused to vacate the property and pay the unpaid lease portion after the natural termination of the lease, Hieb and Haas commenced an eviction action against them. In view of section 33–06–01(4), NDCC, *supra*, f.n. 3, and the Jelineks' nonpayment of rents, the court did not err in ordering the eviction.

■ Because the Jelineks refused to pay the rent which was due, Hieb and Haas were under no obligation to extend to them the right of first refusal to relet the property as contained in Paragraph Six of the lease. The primary consideration for any lease is the rent to be paid. Because nonpayment of rent substantially undermines the basis for the agreement, it would be fundamentally unfair to require a landlord to offer a tenant a right of first refusal when rental payments are uncertain or delinquent. *See Hindquarter Corp. v. Property Development Corp.*, 95 Wash.2d 809, 631 P.2d 923 (1981); *Brown v. Hoffman*, 628 P.2d 617 (Colo.1981); *Gadsden Bowling Center, Inc. v. Frank*, 249 Ala. 435, 31 So.2d 648 (1947).

■ Therefore, it is commonly held that the right to exercise an option to renew a lease or the right to demand a first refusal to renew, is implicitly dependent upon the faithful performance of the conditions and covenants contained in the lease. It is axiomatic, then, that the nonpayment of rents precludes a lessee from demanding a right of first refusal or exercising an option to renew. *Thrifty Dutchman v. Florida Supermarkets*, 541 So.2d 634, f.n. 2 (Fla.Ct. App.1989); *Hindquarter, supra; Brown, supra; Nork v. Pacific Coast Med. Enterprises*, 73 Cal.App.3d 410, 140 Cal.Rptr. 734 (1977); Wanda Ellen Wakefield, Annotation, *Right to Exercise Option to Renew or Extend Lease as Affected by Tenant's Breach of Other Covenants or Conditions*, 23 A.L.R.4th 908 (1983).

■ The court found that the Jelineks failed to pay the required rents.[4] Because rents are an implied condition to the exercise of an option to renew or a right of first refusal,[5] Adolph is precluded from asserting that Hieb and Haas were obligated to extend them the right of first refusal to relet the property.

## V.

■ At oral argument, Adolph prayed for damages from the alleged illegal destruction of his millet crop. When the trial court ordered the eviction, it also ordered that, by March 15, 1992, the Jelineks remove the millet crop which they had planted on the property the previous year. The Jelineks filed a motion for extension of

3. A method of enforcement of the right to forfeiture, thereby terminating the lease, is by an eviction action pursuant to Chapter 33–06, NDCC. Section 33–06–01(4), NDCC, states that an action for eviction may be maintained if a lessee "holds over after the termination of his lease or expiration of his term, or fails to pay his rent for three days after the same shall be due."

4. It is immaterial that Adolph sublet his interest in the real property to his son, Jeff. Lease covenants restricting assignments and subletting are strictly construed against the lessor. *Olson v. Peterson*, 288 N.W.2d 294 (N.D.1980). Since the lease covenant only disallowed assignments, subletting is permitted. Furthermore, provisions prohibiting assignments and subletting are for the lessor's benefit, and the lessor may waive them. *First State Bank of Barton v. St. Anthony & Dakota Elevator Co.*, 64 N.D. 138, 250 N.W. 778 (1933). The sublessee, Jeff, issued a rental check to Hieb in satisfaction of the April 1991 lease payment. Since Hieb and Haas are only contending that the November 1, 1991 lease payment is delinquent, we assume that they accepted and cashed Jeff's check, thereby assenting to the sublease.

5. We recognize, without reaching the point in this case, that some courts hold that a lessor may, by accepting late rental payments, waive the express or implied condition that the prompt payment of rents is a prerequisite for the exercising of an option or a right of first refusal. *See generally Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982); *but see Krepcik v. Tippett*, 109 Idaho 696, 710 P.2d 606 (Ct.App.1985); *Lenci v. Owner*, 30 Wash.App. 800, 638 P.2d 598 (1981). As Adolph has not furnished a transcript, we have no record if Hieb and Haas routinely accepted late rent payments, nor need we decide if such a waiver would extend beyond the expiration of the lease.

time, claiming that the millet crop could not be harvested by that date. The trial court extended the removal time until March 24, 1992. A hearing was held, and the trial court issued an amended judgment on March 30, 1992 which postponed the removal time until April 6, 1992. If the millet was not removed, the court directed that Hieb and Haas could remove it themselves without regard to its value. After the millet was not removed by April 6, 1992, the crop was burned by Hieb and Haas—prior to 10 days after the entry of the March 30, 1992 amendment judgment. Adolph contends damages should be assessed against Hieb and Haas because Rule 62, NDRCivP, requires a 10-day stay on judgments.

Section 33-06-04, NDCC, states that no counterclaim in an eviction action can be interposed except as a setoff to a demand made for damages or for rents and profits. The record before us shows that no written counterclaim for damages was filed with the trial court and, absent a transcript, we cannot determine if one was made orally at the hearing. We cannot review the testimony that Adolph alluded to during oral arguments which placed a value on the millet crop.

Furthermore, Rule 62, NDRCivP, was not considered in the trial court. When the trial court gave Adolph one week to remove the millet, he should have objected to the time restraint. Since we have no transcript, we are unable to determine if he voiced an objection. We therefore assume that the objection was not made in the trial court since Adolph has not carried his burden of showing that an objection was made, or that the trial court ruled erroneously on the objection. Since it was not presented to the trial court, we do not consider it on appeal. *State v. Tweed*, 491 N.W.2d 412 (N.D.1992); *Gange v. Clerk of Burleigh County District Court*, 429 N.W.2d 429 (N.D.1988).

Finally, Adolph contends that the judgment of the trial court which set the April 6, 1992 removal was impossible to comply with because the crop was not harvestable by that date. Because we have no transcript of the proceedings below, we cannot review the testimony which Adolph claims supports his view that the millet was not harvestable.

On the record before us, we conclude that the trial court did not abuse its discretion in ordering the crop removed by April 6, 1992. Adolph has not carried his burden of showing that the trial court's actions were clearly erroneous.

The amended judgment of the trial court is affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.